IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TIMOTHY RICHARD WARREN, )
)
      **Plaintiff,** )
)
v. ) CASE NO. _____
) Jury Demand
METROPOLITAN GOVERNMENT OF )
NASHVILLE AND DAVIDSON COUNTY, TN; )
CORPORAL JEREMI SNIPES; )
SERGEANT SEAN LLOYD; )
CORPORAL JOHN HAYES; and )
OFFICER ALONA WILLIAMS; )
)
      **Defendants.** )

## COMPLAINT

Comes now the Plaintiff, by and through his attorneys of record, and for cause of action against the Defendants, both jointly and severally, would respectfully state as follows:

### I. INTRODUCTION

1. This action is brought against the Defendants pursuant to 42 U.S.C. § 1983 for deprivation of civil rights secured by the Fourteenth Amendment to the United States Constitution.

2. This action is brought additionally and alternatively pursuant to the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 et seq.

### II. JURISDICTION AND VENUE

3. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

4. This is an action for redress for violations of the civil rights laws of the United States and jurisdiction of this Court is therefore invoked pursuant to 28 U.S.C. § 1343(a), 42 U.S.C. § 1983, and 20 U.S.C. § 1681(a).

5. This Court has supplemental jurisdiction for Plaintiff's Tennessee Governmental Tort Liability Act claims pursuant to 28 U.S.C. § 1367(a) because such claims are "so related to claims" within this Court's original jurisdiction "that they form part of the same case or controversy."

6. The acts and omissions and the resulting claims asserted in this Complaint occurred in and arose in Nashville, Davidson County in the State of Tennessee and in this District. Venue is thus properly laid in this Court pursuant to 28 U.S.C. § 1391(b).

### III. PARTIES

7. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

8. Plaintiff TIMOTHY WARREN is and has been at all times relevant hereto a resident of Davidson County, Tennessee.

9. Defendant METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TN (hereinafter "METRO") is a political subdivision of the State of Tennessee. Defendant is and was at all times relevant responsible for the training and supervision of the named Defendants. METRO at all times relevant has the responsibility, and/ or delegated to Daron Hall, Sheriff of Davidson County, the responsibility to establish and implement policies, practices, procedures and customs, used by law enforcement officers employed by METRO regarding the use of force concerning pre- trial detainees.

2

10. Defendants CORPORAL JEREMI SNIPES, SERGEANT SEAN LLOYD, CORPORAL JOHN HAYES, and OFFICER ALONA WILLIAMS were, at all times relevant hereto, employees of the Davidson County Sheriff's Office and employed at the Criminal Justice Center. At all times relevant hereto, each of these defendants were acting in the course and scope of their employment as law enforcement officers with METRO. They are sued in their individual and official capacities.

11. Each Defendant, individually and in conspiracy with one another, were acting in the course and scope of their employment, and under color of state law at all times material to the allegation contained in this Complaint.

## IV. STATEMENT OF FACTS

12. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

13. Plaintiff TIMOTHY WARREN entered the Davidson County Criminal Justice Center as a pre-trial detainee on or about January 1, 2014 after being arrested for public intoxication.

14. On January 1, 2014 at approximately 1:25 a.m., Defendant JEREMI SNIPES, pursuant to his job duties, was responsible in whole or part for the booking of MR. WARREN. During the course of this process, Defendant SNIPES punched Plaintiff WARREN in the face, causing Plaintiff WARREN to suffer grievous injury.

15. Defendant SNIPES'S punch to Plaintiff WARREN'S face served no valid law enforcement purpose.

16. After Plaintiff WARREN was punched in the face, he was subjected to further force and restraint by Defendants SNIPES, LLOYD, HAYES, and WILLIAMS.

3

17. Defendant WILLIAMS placed her hand and knee on the side of Plaintiff WARREN'S head, and then administered a chemical spray to his face.

18. Defendant LLOYD pushed down on the legs of Plaintiff WARREN and applied restraints.

19. Defendant HAYES grabbed the upper body of Plaintiff WARREN and held him down, ostensibly to prevent him from getting back up to his feet.

20. Defendant SNIPES also participated in the restraint of Mr. Warren on the ground.

21. All aforementioned events are stated upon information and belief. It should be noted that the above events were recorded and preserved by video camera. Attorneys for Defendant METRO have declined to allow the Plaintiff's attorneys to view such video pre-litigation.

22. After being restrained, Plaintiff WARREN was escorted to a "seclusion cell."

23. Plaintiff WARREN stayed, alone, in the "seclusion cell" for over an hour in immense pain from head and leg injuries without adequate medical treatment.

24. At approximately 3:12 a.m., jail staff determined that Plaintiff WARREN'S right ankle injury was sufficiently severe to require medical attention at a hospital and caused him to be transported for treatment. Mr. Warren ultimately required and had surgery on the injured ankle.

25. Later that morning, Defendants SNIPES and HAYES filed Disciplinary Incident Reports stating that Plaintiff WARREN sustained his ankle injury *before* he was punched in the face by Defendant SNIPES.

4

26. On January 2, 2014, Sgt. Scott Satterlee filed a Use of Force Report regarding the incident. The Report noted that Plaintiff WARREN "possible [sic] injured his ankel [sic] as he walked into intake." Lt. William Gise, commented on the report: "The amount of force used does appear to be inappropriate; however it was the officer [sic] immediate reaction to the incident. The inmate?s [sic] ankle appears to be broken during the UOF when the inmate rolls his ankle and falls. UOF complies with DCSO policies; however the inmate should have been placed in cuffs when he started treating staff. This has been addressed with staff."

27. On January 3, 2014, Plaintiff WARREN properly filed an "inmate grievance form" to report the incident.

28. On January 7, 2014, an investigating officer who reviewed the grievance, Lt. William Gise, concluded that the Defendants' actions "were within policy" and found the complaint "unsubstantiated."

29. On October 23, 2014, Sgt. Scott Satterlee's Use of Force Report was amended with the following "administrative disposition" by Chief of Security Jamie Johnson: "This UOF does not appear to be in compliance with DCSO policy or procedure. This needs to be reviewed by HR."

30. Ultimately, after further review of the incident in its entirety, Defendant SNIPES was suspended from work for his use of excessive force against the Plaintiff in this incident.

31. As a direct and proximate result of the incident on January 1, 2014, Plaintiff WARREN sustained various injuries including a broken fibula, right ankle fracture, ankle dislocation, and facial lacerations.

32. As a direct and proximate result of the above described acts, Plaintiff Warren sustained significant injury from which he suffered and continues to suffer great physical and emotional pain. He has incurred and will continue to incur significant medical care and expense, lost wage, loss of earning capacity, permanent impairment and scarring, pain and suffering and loss of ability to enjoy life.

## V. FEDERAL CLAIMS FOR RELIEF (42 U.S.C. § 1983)

### A. EXCESSIVE FORCE

33. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

34. The actions and inactions of the Defendants which resulted in the Plaintiff's injuries were done under color of state law and in a manner which caused the Plaintiff to suffer constitutional violations. Specifically, the Defendants operated to violate the right of the Plaintiff not to be subjected to excessive force under the Fourteenth Amendment's Due Process Clause, which protects a pretrial detainee from the use of excessive force that amounts to punishment and does not serve a legitimate governmental purpose. A reasonable person would have known that this constitutional right was clearly established at the time the alleged wrongful conduct occurred, and that such conduct violated that right.

35. Defendants operated to violate the Plaintiff's civil rights as protected by the Civil Rights Act of 1871, 42 U.S.C. § 1983.

36. The conduct of Defendants in this matter was intentional, reckless, deliberate, unjustified, excessive, and was indicative of their disregard of and indifference to the Plaintiff's wellbeing which led to the unnecessary infliction of pain and suffering, and the deprivation of his constitutional rights to be free from excessive force that amounts to punishment.

37. The amount of force used in this case was grossly disproportionate to the need to apply force or maintain discipline.

38. The force used here was not in a good faith effort to maintain or restore discipline in circumstances under haste, under pressure, and without the luxury of a second chance. Rather, Defendants acted excessively, intentionally, and without a legitimate penologic purpose.

39. Each Defendant failed to protect Plaintiff from the excessive force of the other Defendants despite having the opportunity to do so.

40. As a direct and proximate result of the unlawful conduct of Defendants, the Plaintiff suffered injury from the deprivation of his civil rights as protected by the Fourteenth Amendment and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

41. As a result of the deliberate indifference to the rights by all Defendants including METRO and its agents, servants, and employees, the Plaintiff suffered serious personal injury and is entitled to relief under 42 U.S.C. § 1983.

### B. FAILURE TO TRAIN

42. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

43. Defendant METRO has adopted policies, procedures, practices or customs within its law enforcement agencies that provide for the handling of pre-trial detainees.

44. The actions of METRO in creating and implementing these policies, procedures, practices or customs amount to deliberate indifference to the right of the Plaintiff to be free of excessive force under the Fourteenth Amendment to the Constitution of the United States.

7

45. As a result of the deliberate indifference to the rights of the Plaintiff by METRO and its agents, servants, and employees, the Plaintiff suffered serious personal injury and is entitled to relief under 42 U.S.C. § 1983.

46. Upon information and belief, the actions and inactions of METRO resulted in the excessive force against the Plaintiff and were done under color of state law and in a manner which caused the Plaintiff to suffer constitutional violations. Specifically, METRO through its failure to adequately train and supervise its agents operated to violate the Plaintiff's right to not be subjected to excessive force as secured to him under the Fourteenth Amendment. A reasonable person would have known that this constitutional right was clearly established at the time the alleged wrongful conduct occurred, and that such conduct violated these rights. This is evidenced, as stated above, by the statements of supervisors, acting as agents of METRO, indicating the actions of the Defendant officers complied with the policies of METRO.

47. The actions and inactions of METRO as alleged in this Complaint were such that its agents was or should have been aware of the substantial risk of harm, but they acted or failed to act despite that awareness.

48. With respect to the failure to train, METRO through its agents was aware that a lack of training or inadequate training created a substantial risk that inmates would unnecessarily suffer serious harm but failed to provide adequate training despite that awareness.

49. METRO, through its agents, was aware that the inadequate training or lack of training on the use of force was likely to lead to constitutional violations and nonetheless failed to provide proper training.

8

50. There was a closely related causal connection between METRO's agents' actions and inactions in supervision and the constitutional violations afflicted on the Plaintiff.

51. METRO's custom or policies of providing insufficient training and oversight constituted deliberate indifference to the constitutional rights of the Plaintiff.

52. METRO directed Defendants to act unlawfully or knew that Defendants would act unlawfully and failed to stop them from doing so. METRO was aware of the facts from which this inference could be drawn, and also drew this inference.

53. METRO's actions and inactions violated clearly established constitutional law and METRO was on notice of his potential liability when injury to an inmate was a probable result of the actions and policies of the sheriff.

54. As a direct and proximate result of the unlawful conduct of METRO as aforesaid, the Plaintiff was deprived of his civil rights.

55. As a direct and proximate result of the unlawful conduct of METRO, the Plaintiff was injured from the deprivation of his civil rights as protected by the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## VI. STATE LAW CLAIMS FOR RELIEF

56. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

57. In addition and in the alternative to the above federal law claims, Plaintiff asserts claims pursuant to the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 et seq.

Case 3:14-cv-02373   Document 1   Filed 12/19/14   Page 9 of 11 PageID #: 9

58. Defendant SNIPES acted negligently in striking Plaintiff WARREN in the face instead of using lesser force. Such negligence was a direct and proximate cause of the Plaintiff's injuries.

59. Defendants SNIPES, LLOYD, HAYES, and WILLIAMS acted negligently in jumping on top of Plaintiff WARREN following the initial punch. Such negligence was a direct and proximate cause of the Plaintiff's injuries.

60. Defendant METRO, through its agents, acted negligently in failing to properly train its officers on appropriate use of force. Such negligence was a direct and proximate cause of the Plaintiffs injuries.

## VII. PRAYERS FOR RELIEF

61. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

62. That process issued to the Defendants and that they be required to answer in the time required by law.

63. That judgment be rendered in favor of the Plaintiff and against the Defendants on all causes of action asserted herein.

64. That Plaintiff be awarded those damages to which it may appear that he is entitled by proof submitted in this case for his physical and mental pain and suffering both past and future, loss of enjoyment of life, and the violation of his rights guaranteed to him by the Fourteenth Amendment to the Constitution of the United States in an amount of no more than five million dollars.

65. That punitive damages be asserted against Defendants.

66. That as to all Defendants the Plaintiff be awarded reasonable expenses including reasonable attorney's fees and expert fees and discretionary costs pursuant to 42 U.S.C. § 1988 (b) and (c).

67. That the Plaintiff be awarded all damages compensable by the Tennessee Governmental Tort Liability Act.

68. That the Plaintiff receive any other further and general relief to which it may appear that he is entitled

69. That a jury of six (6) is demanded.

Respectfully submitted,

David J. Weissman (BPR #25188)
Benjamin K. Raybin (BPR #29350)
HOLLINS, RAYBIN & WEISSMAN, P.C.
424 Church Street, Suite 2200
Nashville, Tennessee 37219
(615) 256-6666
(615) 254-4254- fax
dweissman@hollinslegal.com
braybin@hollinslegal.com

*Attorneys for Plaintiff*